CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
APR 0 9 2007
JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| FRANK AUSTIN ARCHER,<br>Plaintiff, | Civil Action No. 7:07CV00088 |
| v. | **MEMORANDUM OPINION** |
| DR. WILBUR F. AMONETTE, et al.,<br>Defendants. | By: Hon. Glen E. Conrad<br>United States District Judge |

The plaintiff, Frank Austin Archer, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983. Having reviewed the complaint, the court concludes that Archer has failed to state a claim upon which relief may be granted. Therefore, the court will dismiss the complaint pursuant to 28 U.S.C. § 1915A(b)(1).[1]

## Background

Archer has been incarcerated at Pulaski Correctional Center (Pulaski) since August 22, 2006. The instant case is the second civil rights action under § 1983 that Archer has filed against Dr. Wilbur F. Amonette, Timothy Thompson, Rebecca Arney, and Deborah Michelle Kesling. The earlier case, Civil Action No. 7:07CV00038, was dismissed without prejudice for failure to state a claim upon which relief may be granted. Although Archer has now provided additional facts regarding his medical treatment at Pulaski, the court concludes that he has still failed to state a claim of constitutional magnitude against the defendants.

---

[1] This statute provides that the court shall dismiss a complaint as soon as practicable if the court determines that it is frivolous, malicious, or fails state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1).

In his complaint,[2] Archer alleges that the defendants failed to adequately evaluate and treat his medical conditions, which include hypertension, anemia, kidney and liver ailments, and hepatitis B. Archer further alleges that the defendants failed to properly review his medical records and that they failed to discuss his medical conditions with one another.

To support his claims, Archer alleges that on August 24, 2006, two days after he arrived at Pulaski, Dr. Amonette entered an order for Archer's blood pressure to be checked for two weeks. Archer alleges that neither Arney, Kesling, nor Thompson followed the order, and that his blood pressure was not checked until September 21, 2006, after he complained of dizziness and headaches.

Archer alleges that on September 21, 2006, Dr. Amonette entered an order for Archer's medical classification code to be changed from D to C, so that Archer could obtain a prison job. However, due to an "oversight" by Kesling, Archer's medical classification code was not changed in a timely manner.

On October 1, 2006, Archer filed an informal complaint regarding the fact that his blood pressure had not been checked. In response, Kesling advised Archer that it did appear that an order to check his blood pressure had been missed, and that the nursing staff had since been monitoring his blood pressure as ordered by the doctor.

Archer alleges that he met with Dr. Amonette on October 26, 2006. During the examination, Archer reported that his vision was blurred and that he was experiencing dizziness. Archer alleges that Dr. Amonette advised him that he could either take his blood pressure

---

[2]On February 27, 2007, Archer filed a motion to amend his complaint to correct a typographical error. The court will grant Archer's motion.

2

medications and experience some dizziness or not take the medications and have his blood pressure rise.

Archer met with Dr. Amonette again on November 16, 2006. Archer reported that he was still experiencing some dizziness, especially when he was in a bending position. Archer alleges that Dr. Amonette "finally" inquired about his family history, performed lab tests, and entered an order requesting a bottom bunk for Archer. Archer further alleges that Dr. Amonette told him that his medical condition is "very complicated," and that the doctor admitted that he did not quite "understand what's happening with [Archer]."

On November 19, 2006, Archer filed a grievance complaining about inadequate medical care. In response, Dr. Amonette advised Archer that his medical problems existed before he was transferred to Pulaski, and that the doctor would continue to evaluate and treat the problems in accordance with test results and Archer's response to treatment.

Archer alleges that Dr. Amonette referred him to a nephrologist, who examined him on November 29, 2006. The nephrologist diagnosed Archer with "late stage II renal disease which could be due to [hypertension or] hepatitis B."

Archer submitted a list of blood pressure readings with his complaint. The list indicates that Archer's blood pressure has been checked over forty times since he has been incarcerated at Pulaski.

## **Discussion**

In order to state a claim under § 1983, a plaintiff must allege facts sufficient to establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that such deprivation is a result of conduct committed by a person acting under color of state

3

law. West v. Atkins, 487 U.S. 42, 48 (1988). Having reviewed Archer's allegations, the court concludes that he has failed to state a claim of constitutional magnitude against any of the named defendants.

It is well settled that a prison official may violate an inmate's Eighth Amendment right to be free from cruel and unusual punishment, if the official acts with "deliberate indifference" to the inmate's "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 102 (1976). The test for deliberate indifference involves both an objective and a subjective component. The alleged deprivation must be, objectively, "sufficiently serious," and the official must know of and disregard an excessive risk to the inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 834-837 (1994). Mere malpractice does not state a federal claim, Estelle, 429 U.S. at 105-106, nor does mere negligence in diagnosis. Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986). Likewise, questions of medical judgment are not subject to judicial review, Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975), and disagreements between an inmate and a physician over the inmate's proper medical care do not state a claim under § 1983 unless exceptional circumstances are alleged. Instead, to establish a claim for deliberate indifference, an inmate must show that the prison official was "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,'" and that the official "also [drew] the inference between those general facts and the specific risk of harm confronting the inmate." Johnson v. Quinones, 145 F.3d 164, 167-168 (4th Cir. 1998) (quoting Farmer, 511 U.S. at 837)).

Applying these principles, the court concludes that Archer has failed to state a claim for deliberate indifference. It is clear from Archer's complaint that he has been evaluated by Dr. Amonette and other members of the prison's medical staff on multiple occasions, that he has

4

been prescribed medications, that he has undergone medical testing, and that he has been referred to a kidney specialist. While Archer may disagree with the manner in which Dr. Amonette has assessed or treated his medical problems, such disagreements fail to state a claim for deliberate indifference. See Russell, 528 F.2d at 319; Wright, 766 F.2d at 849. Even assuming that Dr. Amonette acted negligently in diagnosing or treating Archer's medical problems, or that the nurses acted negligently in reviewing Archer's medical records, neither negligence nor malpractice is actionable under § 1983. See Estelle, 429 U.S. at 105-106.

To the extent Archer complains of a two-week delay in having his blood pressure checked after he first arrived at Pulaski, the court concludes that Archer has also failed to satisfy the objective component of the test for deliberate indifference. A delay in receiving medical care may constitute a violation of the Eighth Amendment only when the delay, itself, causes substantial harm. See Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); Wynn v. Mundo, 367 F. Supp. 2d 832, 838 (M.D. N.C. 2004). Here, the ailments that allegedly resulted from the delay in checking Archer's blood pressure -- headaches and dizziness -- are not sufficiently serious to give rise to an Eighth Amendment claim. See Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999) (holding that an inmate failed to allege injuries that were "sufficiently serious to be constitutionally actionable," where the inmate complained of dizziness, headaches, chest pain, and sinus problems).

## Conclusion

For the reasons stated, the court concludes that Archer has failed to state a claim upon which relief may be granted. Thus, the court will dismiss his complaint pursuant to 28 U.S.C. §

5

Case 7:07-cv-00088-GEC-mfu   Document 7   Filed 04/09/07   Page 5 of 6   Pageid#: 32

1915A(b)(1). The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the plaintiff.

ENTER: This 4th day of April, 2007.

/s/ Jackson L. Kiser
United States District Judge